**SIGNED THIS: November 5, 2024**

_____
**Mary P. Gorman
United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No.   23-90322 |
| JEREMY A. ROHL, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JEFFREY D. RICHARDSON, ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. No.   24-09001 |
| ) | |
| LEIGHANNE ROHL, ) | |
| ) | |
| Defendant. ) | |

# O P I N I O N

Before the Court, after trial, is the complaint of the Trustee to recover alleged preferential and fraudulent transfers made by the Debtor to his ex-wife,

Leighanne Rohl, n/k/a Leighanne Mechling.[1] For the reasons stated herein, judgment will be entered in favor of the Trustee in the amount of $3500 related to the fraudulent conveyance by the Debtor to Ms. Mechling of a portion of the proceeds from the sale of their marital residence. In all other respects, the relief sought by the Trustee will be denied.

## I. Factual and Procedural Background

The Debtor, Jeremy Rohl, filed his voluntary petition under Chapter 7 on July 25, 2023. Jeffrey D. Richardson was appointed as the case trustee. Relevant to the issues here, about two months after filing the case and after meeting with the Trustee, the Debtor filed an amended statement of financial affairs. He disclosed therein that, on August 11, 2022, the day he and Ms. Mechling sold their residence, he paid Ms. Mechling $7000 as reimbursement for her contribution of the downpayment when the house was purchased, $2603 to reimburse her for the Debtor's share of household expenses, and $3300 to reimburse funds the Debtor had "borrowed" from their minor son's savings account. He also disclosed a $2300 payment to his mother.

The Trustee filed a six-count complaint against Ms. Mechling. In Counts I, II, and III, he seeks to avoid and recover $3500 of the transfer made by the Debtor to Ms. Mechling as reimbursement for the downpayment under alternate theories of fraudulent conveyance and preferential payment. In Count IV, he seeks to avoid the transfer of a one-half interest in a 2016 Chevrolet

---

[1] The Trustee sued the Defendant as Leighanne Rohl. The Defendant said that she preferred to be called by her current name of Leighanne Mechling, and the Court will refer to her by that name throughout this Opinion.

Equinox automobile he claims the Debtor transferred to Ms. Mechling under a fraudulent conveyance theory. In Counts V and VI, the Trustee seeks to avoid and recover a transfer of $4000 he claims was made to Ms. Mechling by the Debtor under a fraudulent conveyance theory.[2]

Ms. Mechling filed several *pro se* answers and cooperated with the Trustee in preparing a joint pretrial statement. She generally denied the material allegations of the complaint. The matter was tried on September 26, 2024.

Prior to the trial, the Trustee had complied with the Court's trial order and docketed his exhibits. At the commencement of the trial, the Trustee reported that he had recently become aware of a marital settlement agreement that had been entered into by the Debtor and Ms. Mechling and filed in their dissolution of marriage case. He said that, although he had not marked and docketed the agreement as an exhibit, he believed that he had a duty as an officer of the Court to disclose the agreement because it arguably provided a defense to Ms. Mechling with respect to his claim regarding the Equinox. He also said that he had a copy of the docket sheet from the dissolution proceedings and requested that both the agreement and docket sheet be admitted into evidence. Ms. Mechling agreed, and the Trustee's request was granted. The docket sheet shows that the dissolution of marriage case was commenced by the Debtor on August 18, 2022, the marital settlement

---

[2] Count VI prays for a judgment of $3500 and therefore seems to duplicate relief sought in Counts I, II, and III related to the house downpayment transfer. Count VI also refers to the allegations of Count V and therefore was likely intended to relate to the alleged transfer of $4000. The discrepancy is not determinative of the outcome of the matter.

agreement and a judgment of dissolution were filed on November 6, 2023, and a final judgment was entered July 29, 2024.[3] The agreement awarded the Equinox to Ms. Mechling, and a 2015 GMC vehicle, in which the Debtor's mother also had an interest, was awarded to the Debtor. The agreement made no award regarding the house sale proceeds but did acknowledge that Ms. Mechling had been paid $7000 as repayment for the use of her nonmarital funds as a downpayment. The agreement also provided confirmation that the Debtor had repaid $3300 to his son's savings account.

The Debtor was the first witness called by the Trustee. He testified that he and Ms. Mechling were married in 2016 and originally purchased a home on Cornell Drive in Tuscola, Illinois. Ms. Mechling used $7000 of her separate funds for the downpayment on the house which was titled in both of their names. That house was later sold, and all the proceeds from the sale were used to purchase another home on East Barker Street in Tuscola. The East Barker Street house was sold on August 11, 2022.

The closing statement from the sale of the East Barker Street property was identified by the Debtor, and he confirmed that, after the payment of an outstanding mortgage and other expenses shown on the statement, net proceeds of $36,784.68 were divided equally between himself and Ms. Mechling. The Debtor also acknowledged that one of the expenses shown on the statement as paid from the sale proceeds before the division of the net

---

[3] It is not clear if the judgment of dissolution filed on November 6, 2023, was entered on that date or later. Both the Trustee and Ms. Mechling treated the marital settlement agreement as having been incorporated in a judgment, and, in the absence of any evidence to the contrary, the Court will treat the agreement in the same way.

-4-

proceeds was $7000 paid to Ms. Mechling. He said that represented repayment to Ms. Mechling for her downpayment on their first home which was later rolled into the purchase of the East Barker Street property. He said that he had never signed any documents promising to repay Ms. Mechling the $7000.

The Debtor testified that, after the closing, he and Ms. Mechling went to his bank where he deposited his check for his share of the net proceeds. He then had the bank issue cashier's checks to Ms. Mechling for $2603 to reimburse her for household expenses and $3300 to reimburse the money he had taken from their son's savings account. He said that both checks were given to Ms. Mechling at that time.

The Trustee questioned the Debtor about a 2016 Equinox vehicle that he had owned with Ms. Mechling during their marriage. The Debtor said that the Equinox had been purchased for them by Ms. Mechling's father in 2018, and he thought the purchase price was around $13,000. He said that he had transferred his interest in the Equinox to Ms. Mechling by signing the title sometime in June 2022. He was uncertain of the exact date he had signed but felt certain that it was before the August house closing. He believed that the vehicle was worth between $8000 and $10,000 at the time of the transfer. He agreed that, in his subsequent divorce from Ms. Mechling, she was awarded the Equinox and he was awarded a truck in which his mother also had an interest.

The Debtor testified that he had about $24,000 in assets when he filed bankruptcy, all of which were exempt. His schedules disclosed about $69,000

of debts, and he said that his debts were more or less the same at the time he signed over the Equinox.

Ms. Mechling was also called as a witness by the Trustee. She acknowledged receiving $7000 from the house sale proceeds and said it was reimbursement for the downpayment she made on the first home purchase. She clarified that if she had not received the payment and the $7000 had been distributed as net proceeds, she would have received $3500 of the funds in any event. Thus, only $3500 came from the Debtor's share of the proceeds.

With respect to the Equinox, Ms. Mechling said that her father had purchased the vehicle for approximately $13,000 and had paid for it, in part, by trading in a car she had previously owned. With respect to the payments from the Debtor, she agreed that she had received $2603 for household expenses but denied that the amount she received for reimbursement to her son's savings account was $3300. She believed that the combined total of the payments was less than $4000.

The parties presented brief closing arguments during which the Trustee abandoned his claim for the $2603 household expense reimbursement and acknowledged that he had failed to prove the amount of the transfer of funds related to the son's saving account. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All

bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate and proceedings to determine, avoid, or recover preferences or fraudulent transfers are core proceedings. 28 U.S.C. §157(b)(2)(A), (F), (H). Because actions to recover fraudulent conveyances do not arise exclusively under the Bankruptcy Code and do not strictly arise in a bankruptcy case—the same cause of action often could be prosecuted under state law in a state court—this Court is exercising "related to" jurisdiction in this proceeding, raising the question of whether there is a constitutional impediment to the entry of a final judgment. *Executive Benefits Ins. Agency v. Arkinson*, 573 U.S. 25, 37 (2014); *Stern v. Marshall*, 564 U.S. 462, 493 (2011). Any impediment to the entry of a final judgment may, however, be overcome by the knowing and voluntary consent of the parties to final adjudication by a bankruptcy judge. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015). In their joint pretrial statement, the parties here resolved the issue by both affirmatively consenting to the entry of a final judgment by this Court.

### III.   Legal Analysis

Several legal issues must be considered in reviewing the evidence and the merits of the Trustee's complaint. The issues involve the elements of fraudulent conveyances and preferential transfers and the effect of a dissolution of

marriage on the determination of whether property is property of the estate and may be recovered by a trustee.

In pursuing his fraudulent conveyance theories, the Trustee generally relies on §548(a)(1)(B), which permits him to avoid any transfer of an interest of the Debtor in property that was made within two years before the bankruptcy filing if the Debtor "received less than a reasonably equivalent value in exchange for the transfer . . . and . . . was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer[.]" 11 U.S.C. §548(a)(1)(B)(i) and (ii).

To prevail in avoiding the alleged fraudulent transfers here, the Trustee must prove: (1) there was a transfer of the Debtor's property to Ms. Mechling; (2) the transfer was made within two years of the bankruptcy filing; (3) the Debtor received less than a reasonably equivalent value for the transfer; and (4) the Debtor was insolvent or rendered insolvent as a result of the transfer. *Chatz v. Stepaniants (In re Fatoorehci)*, 546 B.R. 786, 792-93 (Bankr. N.D. Ill. 2016) (citation omitted). The Trustee has the burden of proving each element by a preponderance of the evidence. *Id.* at 793. Once a transfer is avoided, it may be recovered from the transferee. 11 U.S.C. §550(a). Similar provisions for the avoidance and recovery of fraudulent transfers are available to the Trustee under state law. *See* 740 ILCS 160/5, 160/6, 160/8.

The Trustee's action to avoid a preferential transfer is based on §547(b), which requires proof that (1) the transfer was made by the Debtor to a creditor; (2) for or on account of an antecedent debt owed by the Debtor prior to the

Case 24-09001    Doc 48    Filed 11/05/24    Entered 11/05/24 11:44:47    Desc Main
Document    Page 9 of 17

transfer; (3) made while the Debtor was insolvent; (4) on or within 90 days before the filing of the bankruptcy petition or within one year of that date if the transferee is an insider; and (5) that enables the creditor to receive more than it would have received in a case under Chapter 7 if the transfer had not been made and the creditor received payment under the provisions of the Code. 11 U.S.C. §547(b); *see Maxwell v. IDC (In re marchFirst, Inc.)*, 381 B.R. 689, 694 (Bankr. N.D. Ill. 2008). As with fraudulent conveyances, once a preferential transfer has been avoided, it may be recovered from the transferee. 11 U.S.C. §550(a). And, again, the Trustee has the burden of proving each element of the cause of action by a preponderance of the evidence. 11 U.S.C. §547(g).

The pendency of a dissolution of marriage action between the Debtor and Ms. Mechling when the bankruptcy was filed may affect the Trustee's rights. When a bankruptcy is filed, "all of the legal or equitable interests of a debtor in property" become property of the estate. 11 U.S.C. §541(a). The rights of a debtor in property are "created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). Under controlling Illinois law, property acquired by either spouse subsequent to the marriage is "marital property." 750 ILCS 5/503(a). Further, a "spouse has a species of common ownership in the marital property which vests at the time dissolution proceedings are commenced[.]" 750 ILCS 5/503(e). In other words, "[d]ivorcing spouses are vested with independent contingent interests in all marital property at the moment a divorce petition is filed." *Reinbold v. Thorpe (In re Thorpe)*, 881 F.3d 536, 540 (7th Cir. 2018).

When a bankruptcy is filed while a dissolution is pending, the trustee succeeds to the rights of the debtor but only to such rights as the debtor has at the time of filing. *Id.* at 539. If the debtor's rights are subject to the contingent interests of a non-filing spouse, then the trustee's rights are likewise subject to those contingent interests. And once the state court divides the marital property, "the obtaining spouse's contingent interest in that property ripens into a full ownership interest. Conversely, the spouse who is not awarded the property sees his contingent interest vanish." *Id.* at 540. A trustee is subject to the same result; his interest in a debtor's property may ripen into full ownership or vanish entirely depending on how the marital property is allocated by the state court.

The Trustee's actions to obtain various assets must be reviewed considering the controlling law. Each asset will be discussed separately.

### A. The $3500 Payment from the Closing

The Trustee seeks a judgment against Ms. Mechling for the extra $3500 she was paid from the proceeds from the sale of the East Barker Street property. In Count I, the Trustee claims that the payment was a fraudulent conveyance. There is no dispute that the transfer of the funds was made by the Debtor within two years of his bankruptcy filing. The Debtor also testified that, when he made the transfer, his debts were about the same as they were when he filed his bankruptcy—an amount in excess of $69,000. Based on the limited evidence presented, his assets were also about the same as when he filed

-10-

bankruptcy and the additional cash from the house sale was not enough to make him solvent. The contested element of proof is whether he received reasonably equivalent value in consideration of the transfer.

Ms. Mechling says that the $7000 she contributed to the first house purchase came from gifts she had received and saved prior to the marriage. The Debtor agreed with that characterization of the funds but said that he never signed anything or otherwise agreed to pay Ms. Mechling back for her contribution. Ms. Mechling presented no evidence of any such agreement. Thus, the payment appears to have been wholly voluntary and made without any legal obligation. This supports the Trustee's position and a finding that the payment should be avoided and recovered as a fraudulent transfer.

The remaining question is whether the marital settlement agreement provides any defense to Ms. Mechling with respect to the $3500 payment. Unfortunately for her, it does not. The agreement does not mention the payment in the property settlement provisions and makes no allocation of the proceeds from the house sale to either the Debtor or Ms. Mechling. Under the debt provisions of the agreement, an acknowledgement is included that says Ms. Mechling was repaid the $7000 she contributed to the purchase of a residence, but the provision makes no specific findings that the money was owed to her by the Debtor. Likewise, nothing in the language suggests that the payment represents an allocation of property that would bring the payment within the *Thorpe* holding.

Based on all of the above, judgment will be entered on Count I of the complaint in favor of the Trustee and against Ms. Mechling to avoid and recover the $3500 transfer for the benefit of the estate. Costs of suit also will be awarded.

Because judgment will be entered on Count I, the Court need not discuss in detail the allegations of Counts II and III that seek the same relief. Count II seeks avoidance of the $3500 transfer on the theory of preferential transfer. But the Trustee, in proving the lack of consideration for the transfer, effectively failed to prove that the payment was made by the Debtor on account of an antecedent debt. Judgment therefore must be entered in favor of Ms. Mechling on Count II. In Count III, the Trustee references §544 but does not specify the subsection upon which he was relying, and he never mentioned any theory of recovery under §544 at the hearing. 11 U.S.C. §544. He also references the Illinois Uniform Fraudulent Transfer Act. 740 ILCS 160/5. Proceeding under state law in Count III as to the same asset subject to Count I is duplicative and unnecessary. Judgment will be entered on Count III in favor of Ms. Mechling.

### B. The 2016 Chevrolet Equinox

In Count IV, the Trustee seeks to avoid and recover the Debtor's transfer to Ms. Mechling of his interest in their 2016 Equinox. At the hearing, the Trustee established that, even though the exact date that the Debtor signed the title was not known, the transfer occurred within two years of the Debtor's bankruptcy. And the same evidence discussed above regarding the Debtor's

insolvency supports a finding of insolvency during the period when the title was signed. The issues then are whether reasonably equivalent value was received for the transfer and whether the terms of the marital settlement agreement and judgment provide a defense to Ms. Mechling.

The Trustee alleged that the Equinox was worth $20,000 when it was purchased, but both the Debtor and Ms. Mechling said the purchase price was $13,000. The Trustee alleged that the value of the transfer was $10,000 and asked for judgment in that amount. The only evidence of value presented was the Debtor's speculation that the Equinox was worth between $8000 and $10,000 when he signed the title. Because there was no evidence that any consideration was paid for the transfer, the estimated value is sufficient to support a finding that the Debtor did not receive reasonably equivalent value for the transfer. This supports the Trustee's claim that the transfer may be avoided. 11 U.S.C. §548(a)(1). It is the recovery of the transfer that is problematic for the Trustee here.

An avoided transfer may be recovered either by having the transferred property turned over to the trustee or by having a judgment enter against the transferee for the value of the property. 11 U.S.C. §550(a). Here the Trustee seeks a judgment for the value of the property but failed to prove what the value was at the time of transfer and the amount of the judgment that should enter. The Debtor's estimated value was sufficient to establish that some value was transferred without reasonable consideration but fell well short of what was needed to establish the precise value for the entry of a money judgment.

Requiring turnover of the Debtor's interest in the Equinox that was transferred technically remains an option under the statute, but as a practical matter, turnover of one-half of a vehicle cannot be accomplished.[4] The Trustee's failure to prove value leaves him without a viable remedy.

Compounding the Trustee's problems is the fact that the marital settlement agreement incorporated in the Debtor's judgment of dissolution provides a further defense to Ms. Mechling. When the dissolution case was filed in August 2022, the Debtor acquired a contingent interest in the Equinox then owned by Ms. Mechling notwithstanding the fact that he had already signed off on the title to the vehicle. *Thorpe*, 881 F.3d at 540. His interest was, however, extinguished by the subsequent agreement of the former spouses and entry of a judgment that awarded the Equinox to Ms. Mechling and a different vehicle to the Debtor. *Id.* Because Ms. Mechling's ownership of the Equinox ripened into full ownership free of any claims of the Debtor or the Trustee as his successor, under *Thorpe*, the Equinox is not property of the estate and cannot be reached by the Trustee. Judgment in favor of Ms. Mechling will be entered on Count IV.

---

[4] The Trustee might argue that, despite his failure to request turnover, this Court could award him one-half of the vehicle and leave possession of the vehicle temporarily with Ms. Mechling. The Trustee could then file another adversary complaint to compel the sale of the entire vehicle. 11 U.S.C. §363(h); Fed. R. Bankr. P. 7001(3). Because the Trustee failed to present any evidence of the current value or condition of the Equinox, however, this Court has no particular confidence that a sale would yield a meaningful dividend to creditors after the payment of sale costs, the Trustee's attorney's fees for two adversary proceedings, the Trustee's commissions, and other expenses.

### C. *$4000 in Cashier's Checks*

In Count V of his Complaint, the Trustee alleges that the Debtor transferred $4000 in cashier's checks to Ms. Mechling in August 2022. He asserts that the transfers were made without consideration and should be avoided and recovered as fraudulent conveyances. At the trial, the Trustee presented testimony from the Debtor that, on August 11, 2022, he gave a check in the amount of $2603 to Ms. Mechling for his share of household expenses and a check for $3300 to reimburse funds he took from their son's savings account. Ms. Mechling disputed the amount of the second check. In his closing arguments, the Trustee abandoned his claim for the $2603 and conceded that he had not proved his entitlement to the $3300.

As to the $2603, this Court has previously opined that when people live together as a family unit, regardless of whether they are married, transfers between them to pay daily living expenses do not fit within the contours of a fraudulent conveyance claim. *Richardson v. Reyes (In re Brashear)*, 2023 WL 8284798, at *5 (Bankr. C.D. Ill. Nov. 30, 2023). This is particularly true when the people involved share a child for whom they are both responsible. *Id.* The result does not change when cash payments by one exceed the cash payments made by the other because non-monetary contributions to the household may provide significant and reasonably equivalent value that must be considered. *Id.* The Court agrees that the Trustee was wise to abandon his claim that the $2603 payment was made without consideration.

With respect to the $3300 payment, Ms. Mechling disputed the amount testified to by the Debtor and the Trustee admitted that he did not have bank records to prove the amount paid. The marital settlement agreement says that the amount was $3300, but Ms. Mechling was not asked whether the agreement refreshed her recollection of the actual amount. Further, and importantly, the Trustee acknowledged that the money taken by the Debtor and repaid by the cashier's check was owed to his son and not to Ms. Mechling. He admitted that the son should have been added as a necessary party to the case. And Ms. Mechling's promise—which she testified she kept—to use the money to replenish their son's savings account provided reasonably equivalent value for the payment she received. The payment was not a fraudulent conveyance. The payment might have been preferential, but no cause of action under that theory was pleaded, presented, or proven. Judgment will be entered on Count V in favor of Ms. Mechling.

Count VI, as mentioned above, is confusing. It says that it is brought under state law and §544 without reference to any subsection. It refers to the transfers set forth in Count V but then also refers to parts of Count III and asks for judgment in the amount of $3500. The Trustee made no argument that Count VI added anything to his complaint or entitled him to any relief not otherwise available if he had prevailed under Counts III and V. For those reasons, judgment will be entered in favor of Ms. Mechling on Count VI.

### IV. Conclusion

The Trustee met his burden of proving that the Debtor's share of sale proceeds paid to Ms. Mechling as reimbursement for funds she contributed as downpayment on the purchase of their marital home was a transfer made at a time the Debtor was insolvent within two years of the bankruptcy and for less than reasonably equivalent value. But the Trustee failed to meet his burden of proving all other matters. As such, only the transfer of $3500 representing the estate's share of sale proceeds paid to Ms. Mechling as reimbursement for her downpayment will be avoided and may be recovered by the Trustee for the benefit of the estate.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###